FILED

June 10, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:05 PM



## COURT OF WORKERS' COMPENSATION CLAIMS
## DIVISION OF WORKERS' COMPENSATION

EDWARD EMOND,
   Employee,

v.

THE FRANKLIN GROUP,
   Employer,

and

BUILDER'S MUTUAL INS. CO.,
   Insurance Carrier.

Docket No.: 2015-03-0021

State File No.: 99095-2014

Date of Injury: November 26, 2014

Judge: Pamela B. Johnson

---

# EXPEDITED HEARING ORDER

---

THIS CAUSE came before the undersigned Workers' Compensation Judge upon the Request for Expedited Hearing filed by the Employee, Edward Emond (Mr. Emond), on April 15, 2015, pursuant to Tennessee Code Annotated section 50-6-239. Upon review of Mr. Emond's Request for Expedited Hearing, the evidence presented at the hearing, the arguments of counsel, and in consideration of the applicable law, the Court finds Mr. Emond is not entitled to the benefits requested.

### Issues

*Whether Mr. Emond sustained an injury arising primarily out of and in the course and scope of employment with The Franklin Group;*

*What is the date of the alleged work injury; and*

*Whether Mr. Emond is entitled to past and future medical expenses.[1]*

---

[1] Mr. Emond announced during the Expedited Hearing that he was not seeking temporary disability benefits at the time of the hearing and agreed to withdraw the request for temporary disability benefits. Based upon the announcement of Mr. Emond and agreement of the parties, Mr. Emond's request for temporary disability benefits is withdrawn.

**Evidence Submitted**

The Court designated the following as the Technical Record:

- Petition for Benefit Determination (PBD), filed January 29, 2015,
- Dispute Certification Notice, filed March 2, 2015,
- Request for Expedited Hearing, filed April 15, 2015,
- Mr. Emond's Position Statement, and
- The Franklin Group's Position Statement.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings and any attachments to them as allegations unless established by the evidence.

The Court admitted into evidence the following:

- EXHIBIT 1: Medical Records of Easterly Family Medicine (7 pages),
- EXHIBIT 2: Medical Records of Blount Memorial Hospital (2 pages),
- EXHIBIT 3: Medical Records of Tennessee Occupational Health (8 pages)
- EXHIBIT 4: First Report of Work Injury
- EXHIBIT 5: Wage Statements (2 pages)
- EXHIBIT 6: Panel of Physicians,
- EXHIBIT 7: Affidavit of Edward Emond, and
- EXHIBIT 8: Affidavit of Cary Franklin.

**History of Claim**

The Franklin Group hired Mr. Emond as a temporary worker to paint approximately two hundred and twenty (220) steel doors. Mr. Emond performed work for The Franklin Group painting doors from November 21, to November 28, 2014, excluding Sunday, November 23, 2014, and Thanksgiving Day, November 27, 2014. The Franklin Group paid Mr. Emond $3,300.00 upon completion of the work performed. *See generally* Exhibit 8 and Exhibit 5, p. 1. On November 21, 2015, Mr. Emond allegedly sustained injury to his lower back and left leg, while moving steel doors. *See* Exhibit 7.

On December 3, 2014, Mr. Emond presented to Easterly Family Medicine (Easterly) with complaints of "low back pain that has been present for 2 days." *See* Exhibit 1, 12/3/2014 office note. Dr. Easterly diagnosed "backache unspecified" and prescribed Sterapred DS[2] and Tramadol[3]. Dr. Easterly further instructed Mr. Emond to follow up in "1-2 months for CPE." *Id.*

On January 13, 2015, Dr. Easterly added an addendum to the December 3, 2014 report:
Revised History of Present Illness: Pt presents with complaint of

---

[2] Sterapred DS is a brand name for Prednisone, used as an anti-inflammatory or immunosuppressant medication. *See* http://www.drugs.com/mtm/sterapred-ds.html.

[3] Tramadol is a narcotic-like pain reliever, used to treat moderate to severe pain. *See* www.drugs.com/tramadol.html.

low back pain that has been present for 2 days after he had been working on/moving/painting approximately 220 steel doors over the weekend.

*See* Exhibit 1, 12/3/2014 office note.

On December 9, 2014, Mr. Emond returned to Easterly "reporting continued low back pain now with pain radiating into the left lower extremity." Dr. Easterly diagnosed "backache unspecified" and "thoracic or lumbosacral neuritis or radiculitis unspecified." *See* Exhibit 1, 12/9/14 office note. Dr. Easterly ordered x-rays of the lumbar spine and a lumbar MRI scan and instructed Mr. Emond to return after imaging. *Id.* X-rays of the lumbar spine showed "[n]o acute fracture, malalignment, or bony destructive lesion" with minimal degenerative change noted. *See* Exhibit 2. Mr. Emond returned the following day with no change in his symptoms. *See* Exhibit 1, 12/10/14 office note.

On December 12, 2014, Mr. Emond presented at Tennessee Occupational Health (TOH) for an "evaluation under Work Comp and states that he selected TOH from the panel provided by his employer." Mr. Emond provided the following history:

> Patient states on 11/24/14 he was moving 220 steel doors weighing 200 lbs. each with the help of another co-worker and noticed later that day that his back was aching. Patient states the next day was Thanksgiving, so he did nothing and thought the pain would go away, but it continued to hurt. Patient states he went to work on Friday and the pain became worse, waking him at night. Patient denies any specific knowledge of any injury that occurred at work, but simply that he felt pain after working on 11/24/14.

*See* Exhibit 3, 12/12/14 office note. The nurse practitioner, Jessica Shamblin, FNP, diagnosed refractory lumbago and left leg neuralgia. *Id.*

On December 18, 2014, FNP Shamblin reviewed Mr. Emond's medical records from Easterly, including the December 3, 9, and 10 office visit notes. After review of the Easterly records, FNP Shamblin noted the following:

> CC was low back pain but in all 3 notes there is no mention of the cause of the pain. The fact that this happened in the workplace is not noted... No notation pertaining to WC is present... The visit 12/3/14 states patient had been hurting for 2 days. This is inconsistent with information provided TOH visit 12/12/14. There are other timeline discrepancies related to onset of neuralgia and gait abnormalities... Patient stated that Dr. Easterly encouraged him to proceed as Work Comp, but this line of conversation is not noted in any dictation received from Easterly's office...
>
> I discussed with patient that no mention of workplace injury or

3

WC made in the records from PCP. He says he and Dr. Easterly discussed this at visits and decided that the back pain could be handled by Dr. Easterly initially. Patient states that when his back pain did not improve and he started having radiating pain, he knew back problems were more serious, which led to the WC initiation.

*See* Exhibit 3, 12/18/14 Record Review/ Phone Call note.

Mr. Emond filed a Petition for Benefit Determination on January 29, 2015. The parties did not resolve the disputed issues through mediation and the Mediating Specialist filed the Dispute Certification Notice on March 2, 2015. On April 15, 2015, Mr. Emond filed a Request for Expedited Hearing. This Court conducted an in-person evidentiary hearing on May 5, 2015. Mr. Emond testified on his own behalf. Cary Franklin and Heidi Jones testified for The Franklin Group.

### Mr. Emond's Contentions

Mr. Emond alleges that on Friday, November 21, 2014, he experienced pain in his left, lower back after he moved several doors. He felt pain and continued working the remainder of the day. At the end of the day, Mr. Emond told Cary Franklin, the owner of The Franklin Group, that he hurt his lower back lifting doors and advised that he did not want to move the doors. Each day thereafter, Mr. Emond continued to tell Mr. Franklin that he did not want to move the doors. On the night before Thanksgiving, November 26, Mr. Emond again advised Mr. Franklin that he hurt his back moving doors and he did not want to move the doors. Mr. Emond's pain increased as he continued working for The Franklin Group.

Mr. Emond first sought medical treatment for his low back from his primary care physician, Dr. Easterly. Mr. Emond testified that he told Dr. Easterly he was on vacation from his regular job and took a side job painting doors, where he hurt his back moving the doors. Several days after his first visit with Dr. Easterly, Mr. Emond experienced pain down into his leg.

Mr. Emond then sought treatment from TOH. Mr. Emond testified that he reported he moved doors and felt pain in his lower back. Mr. Emond further testified that one night, the pain went down into his leg. TOH ordered an MRI, which The Franklin Group's carrier cancelled.

At the time of the work injury with The Franklin Group, Mr. Emond worked full time for Bailey's International. He last worked for Bailey's International on Thursday, November 20, 2014. While taking a one-week vacation from Bailey's International, Mr. Emond worked as a temporary worker for The Franklin Group. At Bailey's International, prior to the work injury, he lifted tubing into a machine, and then programmed it to "machine" the tubing. After machining, the tubing is dropped onto a table. Mr. Emond then lifted the tubing from table and placed it into a box. If the tubing was too heavy, a crane placed the tubing into the machine and then the crane lifted the machined tube from the table into a box. Since the work injury, an assistant performs the lifting required of Mr. Emond's job at Bailey's International.

4

Mr. Emond contends that The Franklin Group hired him to perform a temporary job. During the course of his employment with The Franklin Group, he sustained an injury to his back that progressively worsened. Mr. Emond requests treatment with Dr. Patrick Bolt, whom he selected from a panel offered by The Franklin Group before its denial of this claim.

## The Franklin Group's Contentions

The Franklin Group contends that Mr. Emond is not entitled to any workers' compensation benefits because he failed to prove that his alleged back injury is causally related to his employment with The Franklin Group. Mr. Franklin denied that Mr. Emond mentioned a back injury on Friday, November 21, 2014. Mr. Franklin testified that Mr. Emond called him on December 3, 2014, and said he was leaving work to go to his doctor. Mr. Emond indicated that it had happened to him one time before and he received a steroid shot and his pain resolved. Mr. Franklin did not make any connection between Mr. Emond's lifting and painting doors and his pain on December 3, 2014. Mr. Franklin denied that Mr. Emond mentioned that his back pain resulted from a work injury.

The Franklin Group alleges that Mr. Emond did not request medical treatment from Mr. Franklin on November 21, 2014, or at any time while he worked for The Franklin Group. Mr. Emond did not seek medical treatment until December 3, 2014, after his temporary employment with The Franklin Group concluded. Mr. Emond did not mention any work injury to Dr. Easterly during his office visits on December 3, 9, or 10.

Mr. Franklin testified further that Mr. Emond called him on December 11, 2014. Mr. Emond advised Mr. Franklin that he had to file a workers' compensation claim against The Franklin Group. Mr. Franklin advised Mr. Emond that he would need to call his workers' compensation insurance agent to report the work injury.

Upon notification that Mr. Emond was seeking workers' compensation benefits, The Franklin Group provided Mr. Emond a panel of physicians and he selected TOH. The Franklin Group's carrier, thereafter, issued a Notice of Denial of Claim on January 8, 2015. On January 13, 2015, Dr. Easterly added an addendum to the December 3, 2014 office note. The Franklin Group argued that it was only after the MRI was ordered and The Franklin Group's carrier denied the claim that Dr. Easterly amended his December 3, 2014 office note to reference a work injury.

Heidi Jones, superintendent for The Franklin Group, testified that she was on the job site where Mr. Emond painted doors on November 21, 2014. Ms. Jones testified that Mr. Emond never mentioned a problem with his back on November 21, 2014. Ms. Jones further testified that she transported another employee to the job site each day. On November 26, 2014, Mr. Emond discussed with her a problem he experienced with a paint gun. Mr. Emond made no mention during the conversation that he was hurt or injured on November 26, 2014. Ms. Jones testified that Mr. Emond had ample opportunity to mention any pain or injury he sustained on the job.

The Franklin Group contends Mr. Emond offered inconsistent statements concerning the date of injury, when the pain began, and when he reported the incident. When Mr. Emond

reported the incident to Mr. Franklin on December 11, 2014, The Franklin Group immediately provided a panel.

Considering the inconsistencies, Mr. Emond failed to demonstrate by a preponderance of the evidence that he sustained an injury arising out of and in the course and scope of his employment. Based upon the medical records, there is no competent or credible medical evidence that Mr. Emond sustained a work injury arising primarily out of and in the course and scope of his employment at The Franklin Group.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. 50-6-116 (2014). Tennessee Code Annotated section 50-6-239(c)(6) provides that "[u]nless the statute provides for a different standard of proof, at a hearing, the employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence." Tenn. Code Ann. section 50-6-239(c) (2014). A different standard of proof exists for the issuance of interlocutory orders at Expedited Hearings than the standard of proof required at compensation hearings. *See McCord v. Advantage Human Resourcing,* No. 2014-06-0063 (Tenn. Work. Comp. App. Bd., March 27, 2015). A Workers' Compensation Judge may enter an interlocutory order for medical or temporary benefits upon a determination that the injured employee would likely prevail at a hearing on the merits. Tenn. Code Ann. 50-6-239(d)(1) (2014); *cf. McCall v. Nat'l Health Care Corp.,* 100 S.W.3d 209, 214 (Tenn. 2003).

### Factual Findings

The Court finds that Mr. Emond reported an alleged work injury on December 11, 2014 to Mr. Franklin of The Franklin Group. The Franklin Group timely provided a panel of physicians and Mr. Emond selected TOH. Mr. Emond received authorized medical treatment. There is no expert opinion contained in the evidence causally relating the alleged work injury to Mr. Emond's work for The Franklin Group.

### Application of Law to Facts

The first issue for this Court's determination is whether Mr. Emond sustained an injury arising primarily out of and in the course and scope of employment with The Franklin Group. The Tennessee Workers' Compensation Act defines "injury" and "personal injury" as an injury by accident,... arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee; provided, that:

> (A) An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not

include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment;

(B) An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;

(C) An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes;

(D) "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility;

(E) The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence.

Tenn. Code Ann. § 50-6-102(13) (2014).

In the present case, Mr. Emond identified a specific incident or set of incidents, identifiable by time and place. Mr. Emond further demonstrated that the specific incident(s) occurred while he performed his job duties for The Franklin Group. The issue then turns to whether the November 21, 2014 incident resulted in an injury arising primarily out of and in the course and scope of employment, and shown by a reasonable degree of medical certainty.

Mr. Emond first sought medical treatment with his primary care physician, Dr. Easterly. In the original office notes from December 3, 9, and 10, Dr. Easterly does not indicate that Mr. Emond reported a work injury or incident or that his symptoms or complaints occurred as a result of a work incident. Dr. Easterly does not provide any opinion on causation.

Mr. Emond next sought authorized treatment from TOH. While Mr. Emond reported that he injured his low back while moving doors, upon receiving medical records from Dr. Easterly, FNP Shamblin identified inconsistencies between the history provided to Dr. Easterly and the history provided to TOH. The TOH records do not contain any expert opinion on causation. Information provided to a medical provider and set forth in the history do not equate to an "opinion" of a physician. The evidence introduced in this case failed to establish that Mr. Emond sustained an injury arising primarily out of and in the course and scope of his employment. At this time, based on the lack of a causation opinion, this Court finds that Mr. Emond is not likely to prevail at a hearing on the merits. In light of this Court's holding, it is not necessary to address the remaining issues.

7

**IT IS, THEREFORE, ORDERED** as follows:

1. The claim of Mr. Emond against The Franklin Group or its workers' compensation carrier for the requested workers' compensation benefits is not entitled to benefits at this time.

2. This matter is set for Initial Hearing on July 14, 2015 at 1:00 pm central/ 2:00 pm eastern time.

   July 14, 2015 at 9:00 a.m. eastern time.

**ENTERED this the 10th day of June, 2015.**

**HON. PAMELA B. JOHNSON**
**Workers' Compensation Judge**

Initial Hearing:

An Initial Hearing has been set on July 14, 2015 at 1:00 pm central/ 2:00 pm eastern time with Judge Pamela B. Johnson for the Court of Workers' Compensation Claims. You must call (855) 543-5041 or toll free at 865-594-0091 to participate in the Initial Hearing.

Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven (7) business days* of the date the Expedited Hearing Order was entered by the Workers' Compensation Judge.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having

a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a statement of the evidence within ten (10) calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must be approved by the Judge before the record is submitted to the Clerk of the Appeals Board.

5. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three (3) business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three (3) business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 10th day of June, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|----------------|---------|-----------|------------------|
| D. David Sexton, II, Esq. | | | X | dsexton@sextonandwykoff.com megan@sextonandwykoff.com |
| Jeff Foster, Esq. | | | X | jfoster@morganakins.com |

PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

9